GARRETT, J.
*574 **28 Claimant Elvia Garcia-Solis (claimant) was injured in a work-related accident. Farmers Insurance Company and Yeaun Corporation (collectively referred to here as insurer) accepted a workers' compensation claim and certain specified medical conditions associated with the accident. Because claimant also showed psychological symptoms, her doctor recommended a psychological referral to diagnose her for possible post-traumatic stress disorder (PTSD). Insurer argued, and the Court of Appeals agreed, that the cost of the psychological referral was not covered by workers' compensation because claimant had failed to prove that it was related to any of the medical conditions that insurer had accepted. Garcia-Solis v. Farmers Ins. Co. , 288 Or. App. 1, 403 P.3d 803 (2017). We allowed review and now reverse.
I. FACTS
A. Legal Background
This case involves the state workers' compensation system. A brief overview will give context for the discussion that follows.
Oregon's workers' compensation law requires employers to provide compensation to workers who suffer "compensable injuries." ORS 656.017(1). The term "compensable injury" is defined in ORS 656.005(7)(a) as:
"an accidental injury *** arising out of and in the course of employment requiring medical services or resulting in disability or death[.]"
If there is an "accident resulting in an injury or death," the worker must give the employer notice "immediately" after the accident. ORS 656.265(1)(a) (discussing additional time limits). Within 60 days after the employer has notice or knowledge of a claim, the insurer (or self-insured employer[1] ) must give the employee a written notice of acceptance or denial. ORS 656.262(6)(a). A written notice of acceptance must "[s]pecify what conditions are compensable." ORS 656.262(6)(b)(A) ; see also ORS 656.267(1) (employer's **29 notice of acceptance is sufficient if it "reasonably apprises the claimant and the medical providers of the nature of the compensable conditions").
In general, the claimant has the burden to show that an "injury" is compensable. ORS 656.266(1). If a claimant believes that a written notice of acceptance incorrectly omits a compensable condition, he or she may object at any time and file a claim for the omitted condition. ORS 656.262(6)(d).
The issue in this case involves the medical services that the insurer must provide. Under ORS 656.245(1)(a), an insurer must provide services to the injured worker "[f]or every compensable injury." Specifically, the statute provides in part:
"For every compensable injury, the insurer *** shall cause to be provided medical services for conditions caused in material part by the injury for such period as the nature of the injury or the process of the recovery requires, *** including such medical services as may be required after a determination of permanent disability."
B. Facts
The facts, which are undisputed, are largely taken from the opinion of the administrative law judge (ALJ).
In 2009, high winds blew down a tent pole at an event where claimant was working as a *575 food server. She was struck on the head and slammed against a wall. Claimant suffered multiple injuries and was hospitalized.
It is not disputed that claimant suffered an accidental injury that arose out of and in the course of her employment. See ORS 656.005(7)(a). Insurer initially accepted the following conditions:
• left midshaft clavicle fracture
• first through third left rib fractures
• C7-T3 spinous process fractures
• full thickness scalp laceration
• left elbow contusion
• T5-T8 compression fractures
**30 In 2011, insurer also accepted the following conditions:
• concussion
• closed head injury
• chronic headache syndrome
• facial scarring
• right supraorbital nerve injury
The issue before us involves psychological symptoms. As early as January 2010, claimant had reported to her doctor, Dr. Erb, that she was having psychological problems when it was windy. The doctor's notes reported that claimant " 'becomes very tearful during a wind storm and quite frightened.' " In late 2011 and again in early 2012, claimant's son reported that claimant was still reacting fearfully to wind. In response, Erb recommended a "[p]sychology referral to address PTSD[ ]like symptoms."
Insurer refused to authorize the psychology referral on the ground that the referral was not causally related to any of the conditions that insurer had accepted.
Claimant then sent Erb the following question:
"Is [claimant's] need for medical services in the form of 'Psychology referral to address PTSD-like symptoms' caused in material part by her work injury of February 25, 2009 in which she sustained severe injuries ***?"
(Emphasis omitted.) Erb checked the following box:
"Yes, [claimant's] need for medical services in the form of 'Psychology referral to address PTSD-like symptoms' [was] caused in material part by her work injury of February 25, 2009."
(Emphasis omitted.)
The matter went to an ALJ, who ruled for insurer. The ALJ explained that the medical services required by ORS 656.245(1)(a) had to be for a "compensable injury," and the Court of Appeals had held that "compensable injury" meant only those conditions previously accepted by an insurer-not necessarily all medical conditions caused by the work injury. Although Erb's response to the question **31 showed that the need for the psychology referral had been caused in material part by claimant's accident at work, Erb did not diagnose claimant with the medical condition of PTSD, nor did the doctor state that the psychology referral was caused by any of the accepted conditions. Thus, the ALJ explained, claimant had not met her burden of proof.
In so ruling, the ALJ expressed sympathy for claimant. He explained that claimant was effectively trapped:
"Claimant *** faces the dilemma that she needs the [psychology] evaluation to determine if she has a mental health condition compensably related to her workplace injury, but she cannot get the insurer to pay for that evaluation because she does not yet have a diagnosis on which to premise a new medical condition claim."
Claimant appealed to the Workers' Compensation Board, which affirmed. The board reiterated that Erb's response to the questions connected the psychology referral only to the "work injury" and not to any accepted condition.
Claimant sought judicial review from the Court of Appeals, arguing on review that diagnostic medical services did not need to relate to an accepted condition, only to the work injury.
A majority of the Court of Appeals rejected her argument and affirmed the board. The majority read this court's decision in Brown v. SAIF , 361 Or. 241, 283, 391 P.3d 773 (2017), to compel the conclusion that "compensable injury" referred only to the already accepted conditions and did not include any *576 compensable condition that had not been accepted. Garcia-Solis , 288 Or. App. at 5, 403 P.3d 803.
Judge Egan filed a dissent. He argued that Brown had only addressed a narrow issue regarding "combined condition" claims, and it had concluded-in that context-that "compensable injury" meant an accepted condition. Id . at 6, 403 P.3d 803 (Egan, J., dissenting). But Brown had also explained that the workers' compensation statutes did not always use terminology consistently, and the opinion had expressly reserved judgment on what "compensable injury" meant in connection with diagnostic services. Id . at 6-7, 403 P.3d 803. Judge Egan concluded that ORS 656.245(1)"explicitly equates **32 'compensable injury' with the incident of injury rather than the condition accepted by the insurance carrier." Id. at 8, 403 P.3d 803.
Claimant sought review, which we allowed.
II. DISCUSSION
The issue before this court involves ORS 656.245 (1)(a), which provides in part: "For every compensable injury, the insurer *** shall cause to be provided medical services for conditions caused in material part by the injury ***."
We begin our analysis by noting several questions that we are not required to address. First, the parties appear to agree that "medical services" includes diagnostic services, and so we will presume that they qualify.[2] Next, the parties have not presented any question as to whether claimant's PTSD symptoms qualify as a "condition," and so we will presume that they do.[3] Finally, the parties do not challenge in this court the board's factual findings that the medical services sought here were caused in material part by the workplace accident but were not caused in material part by any "accepted condition."
The issue before us, then, is the legal question regarding the meaning of "compensable injury." Insurer asserts that the Court of Appeals correctly held that "compensable injury" means only "accepted conditions." It relies primarily on the definition in ORS 656.005(7)(a) and this court's decision in Brown . Because the medical services sought by claimant are not for any accepted condition, insurer maintains that the services are not for a "condition[ ] caused *** by the [compensable] injury." ORS 656.245(1)(a).
**33 Claimant asserts that "compensable injury" in ORS 656.245(1) is not limited to accepted conditions, but refers more generally to the workplace accident that created the need for medical treatment. Because the board found that claimant had presented evidence that her requested medical services were caused in material part by the workplace accident, claimant contends those medical services are "for conditions caused *** by the [compensable] injury."
The issue before us is one of statutory construction. Accordingly, we consider the text, context, and any relevant legislative history under the methodology articulated in PGE v. Bureau of Labor and Industries , 317 Or. 606, 610-12, 859 P.2d 1143 (1993), and State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009).
We begin with the statutory text. ORS 656.245(1)(a) provides:
"For every compensable injury, the insurer *** shall cause to be provided medical services for conditions caused in material part by the injury for such period as the nature of the injury or the process of the recovery requires, *** including such medical services as may be required after *577 a determination of permanent disability. In addition, for consequential and combined conditions described in ORS 656.005(7), the insurer or the self-insured employer shall cause to be provided only those medical services directed to medical conditions caused in major part by the injury."
If "compensable injury" here means the work accident, then claimant is correct and the insurer must provide medical services for those conditions "caused in material part by the" work accident. If "compensable injury" means only those conditions already accepted by the insurer, however, then insurer is correct: Claimant's requested medical services were not caused in material part by an accepted condition, and thus insurer need not provide those services under ORS 656.245(1)(a).
As noted above, "compensable injury" is a defined term, so we begin our analysis with that definition. See Comcast Corp. v. Dept. of Rev. , 363 Or. 537, 544, 423 P.3d 706 (2018) (giving primacy to statutory definition). ORS 656.005(7)(a) provides in part:
**34 "A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings, subject to the following limitations [not relevant here.]"
Insurer argues that Brown interpreted that definition and held that "compensable injury" refers only to accepted conditions. We certainly agree that Brown leaves little doubt that it interpreted the statutory definition of "compensable injury" to mean medical conditions and not the work accident generally. See 361 Or. at 255-72, 391 P.3d 773 (reviewing text, context, and legislative history to conclude that "injury" means a medical condition, not an accident). This court noted that the definition in ORS 656.005(7)(a) refers not just to an accidental injury, but to an accidental injury to a prosthetic appliance-something that is "not an event," but instead "the result of an accidental event." Id . at 256, 391 P.3d 773 (emphasis omitted). Additionally, the statutory definition requires that the "compensable injury" be determined by "medical evidence" and supported by "objective findings," which is more consistent with the term meaning a medical condition rather than the work accident itself. Id . at 257, 391 P.3d 773.
The Brown opinion is less clear as to whether "compensable injury" refers only to accepted medical conditions-a question that was not before us. Brown involved the meaning of "otherwise compensable injury" as used in ORS 656.005(7)(a)(B), which addresses what is known as a "combined condition." Much of the court's analysis was focused on that specific definition, and the rationale is not necessarily applicable to the term "compensable injury" as used elsewhere in the statutory scheme.[4]
**35 At the same time, Brown does contain several broad assertions that "compensable injury" means "accepted conditions." See id . at 273, 391 P.3d 773 ("Although the original definition of 'compensable injury' in 656.005(7)(a) did not explicitly link the term with acceptance, the fact remains that the courts long have supplied that very link."). In discussing case law, for example, the opinion moves without comment from discussing one case addressing "otherwise compensable injury" to a second case addressing "compensable injury" generally. Id . at 274-76, 391 P.3d 773.[5]
*578 We will assume, for purposes of argument, that Brown does interpret ORS 656.005(7)(a) to hold that "compensable injury" means only accepted conditions. It is true that, as a general proposition, we assume that the legislature uses terms consistently. See, e.g. , Comcast , 363 Or. at 546, 423 P.3d 706 ("We ordinarily presume that the legislature intended words enacted as part of the same statute to have the same meaning throughout that statute."). Several factors, however, counsel against our assuming too quickly that ORS 656.245(1)(a) uses "[compensable] injury" the same way as ORS 656.005(7)(a).
First, the assumption of consistency is only an assumption. The text and context of a statute can refute that assumption. See **36 Village at Main Street Phase II v. Dept.of Rev. , 356 Or. 164, 175, 339 P.3d 428 (2014) ("[T]he general assumption of consistency counsels us to assume that the legislature intended the same word to have the same meaning throughout related statutes unless something in the text or context of the statute suggests a contrary intention ." (Emphasis added.)).
Second, in the workers' compensation statutes the legislature itself has expressly recognized that the particular statutory context may require courts to give a different meaning even to a defined term. ORS 656.003 provides that the definitions in ORS 656.005 govern "[e]xcept where the context otherwise requires."
Third, and relatedly, Brown itself expressly warns that the workers' compensation statutes do not use terminology consistently. As the court stated:
"There is little that is 'plain' about this state's workers' compensation statutes, certainly with respect to the terminology at issue in this case. In fact, there appears to be a tendency on the part of the legislature to use a number of different terms in not altogether consistent fashion, sometimes treating them as essentially synonymous and at other times treating them as signifying different things."
361 Or. at 253, 391 P.3d 773 (followed by numerous examples).[6] In a note that is particularly relevant to the meaning of "compensable injury," the court added:
**37 "[S]ome of the terms themselves are reasonably capable of more than one meaning. The term 'injury,' for example, plausibly may refer either to an event or to a resulting condition."
*579 Id . at 254, 391 P.3d 773. In Bundy v. NuStar GP, LLC , 362 Or. 282, 292-93, 407 P.3d 801 (2017), we reiterated that, based on Brown , "the meaning of the term ['injury'] in a particular provision must be determined by considering the relevant statutory context."
Fourth-and perhaps most importantly- Brown specifically reserved any decision regarding whether it had determined the meaning of "[compensable] injury" as that phrase is used in ORS 656.245. The court stated:
"As we have noted, the workers' compensation statutes expressly address the subject of the compensability of [diagnostic] medical services in ORS 656.245. This case does not involve that issue. In fact, it is the subject of ongoing litigation in other cases. See, e.g. , SAIF v. Carlos-Macias , 262 Or. App. 629, 325 P.3d 827, rev. pending (2014) (holding that such diagnostic medical services are compensable). Accordingly, we will express no opinion on the subject one way or the other * * *. Such medical services may or may not be compensable. Whether they are will depend on the careful construction of the relevant terms of the applicable statute in accordance with ordinary rules that apply to that task."
361 Or. at 282, 391 P.3d 773.
Thus, even if Brown was definitive on the question of what "compensable injury" means generally, the limits on the assumption of consistency and the holding in Brown itself counsel us to examine ORS 656.245(1) independently to see how it uses the term "[compensable] injury."
Accordingly, we turn to the specific phrasing of ORS 656.245(1). The first sentence of ORS 656.245(1)(a) mandates that an insurer must provide "medical services for conditions caused in material part by the [compensable] injury." That phrasing distinguishes "conditions"-in context, medical conditions that require "medical services"-from the "injury," which is the event that "caused" those medical conditions. That phrasing is inconsistent with an understanding that would equate "injury" with "condition,"
**38 even if injury has that meaning in other provisions within the workers' compensation statutes. Furthermore, insurer's proposed reading of the sentence would transform the text into a requirement that an insurer provide "medical services for conditions caused *** the [accepted conditions]," functionally causing the sentence to refer only to consequential conditions.[7] In short, "[compensable] injury" in the first sentence of ORS 656.245(1)(a) appears clearly to refer to the work accident and not to any resulting medical conditions, accepted or otherwise.
The second sentence of ORS 656.245(1)(a) also uses "[compensable] injury" in the same way. That sentence relates to consequential or combined conditions, and it requires the insurer to provide "those medical services directed to medical conditions caused in major part by the [compensable] injury." That text even more explicitly distinguishes "medical conditions," which require medical services, from "the injury," which again is the thing that "caused" the conditions. Thus, "injury" in that context again refers to the work accident and not to the resulting medical conditions.
That said, ORS 656.245(1)(a) is not consistent in its use of "[compensable] injury." The first sentence of ORS 656.245(1)(a) uses "the injury" twice, and the second time the term has a different meaning. Under the first sentence, an insurer must provide medical services "for such period as the nature of the injury or the process of the recovery requires." (Emphasis added.) That usage of "injury" there would necessarily seem to involve a medical condition. It would be difficult to make sense of a direction to provide medical services for a period of time that depends on "the nature of the work accident."
In short, ORS 656.245(1)(a) presents a situation where the same term-here, "injury"-is used in different ways, with apparently different meanings, within the same statutory provision. The phrase "medical services *580 for conditions caused *** by the injury" uses "injury" to mean **39 the workplace accident. The phrase "for such period as the nature of the injury *** requires" uses "injury" to mean the medical condition that resulted from the accident. We cannot choose one or the other. Rather than do violence to the statutory text by artificially imposing the same meaning on all uses of the term "injury," we seek to give effect to what the legislature actually intended.
In this particular case, we are concerned with what "injury" means in the phrase "medical services for conditions caused *** by the injury." Because that use of "injury" refers to the work accident, the text supports claimant.
We turn to the statutory context. Insurer contends that other provisions of the workers' compensation statutes show that the legislature used "compensable injury" to mean "accepted condition." For example, insurer notes that ORS 656.265(1)(a) requires a worker to give "[n]otice of an accident resulting in an injury," and therefore maintains that "injury" cannot mean "accident."
To the extent that insurer identifies other provisions that use the term "compensable injury" to mean an accepted condition, that does little to advance insurer's position, for reasons already noted. That broad contextual argument depends heavily on an assumption of terminological consistency in the workers' compensation statutes-an assumption that we cautioned against in Brown . The clear textual indicators of meaning in ORS 656.245(1)(a) itself cannot be disregarded because of other ways in which "compensable injury" is used throughout the workers' compensation code.[8]
**40 Claimant, for her part, relies on the original 1965 version of ORS 656.245(1)(a) as supporting her position. The context for interpreting a statute can include prior versions of the same statute. See, e.g. , State v. McNally , 361 Or. 314, 325, 392 P.3d 721 (2017) (so noting).
When first enacted in 1965, the statute provided:
"For every compensable injury, the direct responsibility employer or the department shall cause to be provided medical services for conditions resulting from the injury for such period as the nature of the injury or the process of the recovery requires, including such medical services as may be required after a determination of permanent disability."
Or. Laws 1965, ch. 285, § 23, codified at ORS 656.245(1) (1965).
The 1965 statute does not directly aid us, because it uses "injury" in the same conflicting senses as does the current statute. The insurer must provide "medical services for conditions resulting from the injury," again indicating that "injury" there means the work accident; the difference from today's text is the required causal relationship. At the same time, the statute also required those services to continue "for such period as the nature of the injury *** requires," indicating that "injury" there means the medical condition. We do note, however, that the 1965 statutes rarely use the term "condition" in any sense of the word. It is plausible, then, *581 that "condition" and "injury" were being used interchangeably and have different meanings at different points.[9] **41 Insurer, for its part, asserts that amendments in 1990 and 1995 are additional context that support its position. It begins with the 1990 amendments, noting that the legislature adopted a requirement that an insurer issue notice of acceptance and specify what conditions are compensable. Or. Laws 1990, ch. 2, § 15, currently codified at ORS 656.262(6)(a).[10] While that may be relevant to the question of what "compensable injury" means generally, it did not change how the word "injury" is used in the phrase "medical services for conditions caused * * * by the injury" in ORS 656.245(1)(a).
Insurer also points to the 1995 amendments, which specifically altered ORS 656.245(1)(a) in a way that insurer contends supports its construction. See Or. Laws 1995, ch. 332, § 25. As we will explain, however, the amendment relied on by insurer is unhelpful to insurer's position, while a second 1995 amendment that insurer did not address is positively harmful to it.
The change relied on by insurer was that the legislature added new text to subsection (4) of ORS 656.245. The relevant portion of subsection (4) provides that, when an insurer has contracted with a managed care organization, the insurer must provide medical services to those workers subject to the contract. The amendment then added:
"Workers subject to the contract include those who are receiving medical treatment for an accepted compensable injury***."
Or. Laws 1995, ch. 332, § 25.
**42 Insurer reads that sentence as if it addressed the substantive medical services to be provided rather than identifying the class of workers subject to the contract, and it reads the open-ended word "include" as if it meant "include only." Based on that, insurer argues that workers subject to managed care organization contracts will only receive treatment for "accepted" conditions; insurer argues that it would be unreasonable to conclude that other workers should receive benefits for conditions that have not been accepted. But the premise of insurer's argument is questionable; an alternative reading of that amendment is that it was meant solely to govern the class of persons who would be eligible for services. We do not decide that question today, but because insurer's interpretation is not obviously correct, we decline to give it significant contextual weight regarding the meaning of ORS 656.245(1)(a).
Insurer notes, but does not address, a second 1995 change to ORS 656.245(1)(a), which added a second sentence. That new sentence provides:
"[F]or consequential and combined conditions described in ORS 656.005(7), the insurer or the self-insured employer shall cause to be provided only those medical services directed to medical conditions caused in major part by the injury."
*582 We have already discussed this sentence. As we noted previously, an "injury" is something that "cause[s]" "medical conditions" that require "medical services." In other words, "injury" in this sentence also means the work accident, not the resulting medical conditions.
For that reason, the 1995 amendment provides context that is inconsistent with insurer's position. It shows that, at a time when the legislature had already created the "accepted condition" requirements, it affirmatively modified ORS 656.245(1)(a) to use "injury" to again refer to the work accident.
To sum up: When ORS 656.245(1)(a) states that "[F]or every compensable injury, the insurer *** shall cause to be provided medical services for conditions caused in material part by the injury," the "injury" is the work accident that **43 caused the medical condition and resulted in the need for medical services. It does not mean medical conditions, and it is not limited to conditions that the insurer has accepted at the time that medical services are sought.
We have explained that our conclusion that "injury" means work accident is context-specific to exactly two uses in the first and second sentences of ORS 656.245(1)(a). It does not apply to the second use in the first sentence of ORS 656.245(1)(a). We do not decide or suggest that it applies to any other statute in the workers' compensation system.
The Court of Appeals and board decisions depended entirely on the contrary conclusion of law, that "compensable injury" in ORS 656.245(1)(a) means only "accepted conditions." Because those holdings were in error, we reverse. Accordingly, we remand to the board for such further proceedings as are appropriate.
The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is reversed, and the case is remanded to the Board for further proceedings.

For simplicity in this opinion, we will use the term "insurer" to include a self-insured employer.

The Court of Appeals has held that diagnostic services may be compensable even if the resulting diagnosis shows that the condition itself is not compensable. Counts v. International Paper Co. , 146 Or. App. 768, 770-72, 934 P.2d 526 (1997) ; Brooks v. D & R Timber , 55 Or. App. 688, 692, 639 P.2d 700 (1982). This court does not appear to have addressed the question.

During oral argument, claimant suggested that her PTSD symptoms may not meet the definition of "condition" that the Court of Appeals approved in Young v. Hermiston Good Samaritan , 223 Or. App. 99, 104-05, 194 P.3d 857 (2008) (defining "condition" as "physical status of the body or one of its parts," while adding that "symptoms" are not a "condition" and are not compensable). However, insurer has not taken that position in the proceedings below or on review, so we do not address the question further.

For example, Brown identified two different statutes that
"explicitly equate[ ] the 'otherwise compensable injury' component of the combined condition claim with the 'accepted injury.' If, as we have concluded, the word 'injury' in this context means a medical condition, it necessarily follows that the statutory term 'accepted injury' means the accepted medical condition."
Id . at 272-73, 391 P.3d 773.

Brown noted that, in SAIF v. Sprague , 346 Or. 661, 217 P.3d 644 (2009), this court construed "compensable injury" to mean an accepted condition. 361 Or. at 275-76, 391 P.3d 773. Insurer maintains that Sprague is independent precedent supporting its position.
We are not persuaded. While Sprague did involve whether ORS 656.245 (1)(a) required particular medical services for the claimant, its resolution of that issue turned entirely on the relationship that the services had to conditions that had already been accepted. See 346 Or. at 675, 217 P.3d 644 (expressly declining to opine on compensability of other medical condition). Because the court's analysis did not depend on whether "compensable injury" meant accepted conditions or the work accident, we hesitate to treat a passing statement in Sprague as controlling. See, e.g. , McDowell Welding & Pipefitting v. US Gypsum Co. , 345 Or. 272, 281, 193 P.3d 9 (2008) (when prior opinions "did not expressly consider the argument that plaintiff raises here," this court "hesitate[s] to give them controlling effect without examining the premises of plaintiff's argument more closely"); Cohens v. Virginia , 19 U.S. (6 Wheat) 264, 399, 5 L.Ed. 257 (1821) (Marshall, C.J.) ("[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.").

Stating that "[e]xamples are legion," the court identified the following:
"ORS 656.005(7)(a)(A), for instance, sets out the elements of a consequential condition claim and expressly equates an 'injury or disease' with a 'condition,' as not even claimant contests. On the other hand, ORS 656.273(1) provides for compensation for a 'worsened condition[ ] resulting from the original injury,' signifying a possible distinction between the two terms. Still other statutes can be read either way. ORS 656.386(1)(b)(A), for example, refers to an employer's refusal to pay benefits because 'the injury or condition for which compensation is claimed is not compensable.' Even more ambiguous is ORS 656.308(1), which provides that, when a worker sustains a 'compensable injury,' the responsible employer remains obligated to pay benefits relating to 'the compensable condition,' unless the worker sustains a new 'compensable injury' involving the same 'condition.' In a similar vein, some workers' compensation statutes refer to acceptance of a 'claim' and specify a process for 'claim acceptance,' e.g. , ORS 656.262(6)(a). Other provisions within the workers' compensation statutes, however, refer to acceptance of an 'injury,' e.g. , ORS 656.262(7)(b), or acceptance of a 'condition,' e.g. , ORS 656.247(4)(b)."
361 Or. at 253-54, 391 P.3d 773 (alteration in original).

Consequential conditions are addressed in ORS 656.005(7)(a)(A), which provides that a condition may be compensable if a "compensable injury is the major contributing cause of the consequential condition."

Insurer makes a separate contextual argument that focuses on the formal requirements a claimant must meet when seeking compensation for a "condition" that is either "new" or has been "omitted" from the original acceptance. See ORS 656.267(1) (must be "clearly request[ed]," with certain forms specifically not allowed); ORS 656.262(6)(d) (worker must give notice of any "incorrectly omitted" conditions in writing). Claimant counters that ORS 656.267(1) provides that a notice of acceptance is not required to identify every condition with specificity. Id . (insurer "is not required to accept each and every diagnosis or medical condition with particularity," but must reasonably apprise claimants and medical providers of "the nature of the compensable conditions").
Those arguments do not go to the meaning of "injury" in ORS 656.245(1)(a). They go to questions regarding what constitutes a condition; whether a condition has been accepted or "omitted"; and whether a condition is "new." We noted earlier that the meaning of "condition" is not at issue before us. Accordingly, we do not decide whether claimant's PTSD symptoms constitute a "condition," nor whether those symptoms fall within the category of conditions accepted without particularity as suggested by ORS 656.267(1), nor whether they may be disqualified as a "new" or "omitted" condition because claimant may have failed to comply with the formal requirements of ORS 656.267.

Claimant asserts that "compensable injury" cannot mean "accepted condition," because the concept of "accepted condition" did not exist at that time. Instead, what an insurer accepted or denied was a "claim." Former ORS 656.262(5) (1965). As we discuss later in the text, it was amendments in 1990 and 1995 that created the "accepted condition" requirement.
Claimant's argument sweeps too broadly. It is not limited to how "injury" is used in the phrase "medical services for conditions caused *** by the injury" in ORS 656.245(1)(a). Claimant's argument is directed toward the entire definition of "compensable injury," both in ORS 656.005(7)(a) and in its use throughout the workers' compensation statutes. As a result, her argument necessarily implies that large swaths of Brown were incorrect. Yet claimant has not asked us to overrule Brown , nor has she identified any errors in Brown 's extensive discussion of how text, context, and case law shows that "compensable injury" means medical conditions and not work accidents. See 361 Or. at 255-72, 391 P.3d 773. She also has not addressed Brown 's (admittedly ambiguous) suggestions that "compensable injury," at least in general usage, is further limited to "accepted conditions." See id . at 272-77, 391 P.3d 773.

The relevant portion of that statute states:
"(6)(a) Written notice of acceptance or denial of the claim shall be furnished to the claimant by the insurer or self-insured employer within 60 days after the employer has notice or knowledge of the claim. ***
"(b) The notice of acceptance shall:
"(A) Specify what conditions are compensable."