390 May 13, 2026 No. 396

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Compensation of Julie A. Daniels,
Claimant.

INTELISTAF HEALTHCARE,
ACE USA, and ESIS,
*Petitioners,*

*v.*

Julie A. DANIELS,
*Respondent.*

Workers' Compensation Board
2005332;
A181989

Argued and submitted April 1, 2025.

Rebecca A. Watkins argued the cause for petitioners. Also on the briefs was SBH Legal.

Julene M. Quinn argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Employer seeks judicial review of a final order of the Workers' Compensation Board, which determined that claimant's medical services claim was for a condition causally related to her 2004 work injury. On review, employer argues that the board legally erred in its application of ORS 656.245(1)(a) and that the board's order is not supported by substantial evidence. We conclude that the board did not err and affirm.

We summarize the facts from the board's order on review and its order on reconsideration. In May 1996, when she was working for a previous employer, claimant injured her low back, for which she had surgery. Her resulting workers' compensation claim was accepted for a right lumbar strain, L3-4 disc herniation, and epidural fibrosis at the site of her L3-4 discectomy. Claimant was able to return to work after treatment and had no symptoms.

In March 2004, while working for employer, claimant again injured her low back, and her resulting workers' compensation claim ultimately was accepted for lumbar strain and an L3-4 annular tear. In September 2005, claimant began treatment with Dr. Morgan, a pain management specialist, for her low back pain.

In 2014, Dr. Kitchel examined claimant at employer's request and determined she had "evidence of a chronic pain syndrome secondary to [the 2004] work injury and possible arachnoiditis as diagnosed in the 2014 MRI scan" that was also related to treatment of the 2004 work injury. He recommended that claimant continue treatment with Morgan and that she continue using an intrathecal pain pump and oral medications.

Morgan continued treating claimant for chronic low back pain and, in October 2018, recommended a trial of Nevro, a spinal cord stimulator, to reduce claimant's pain and to attempt to reduce claimant's reliance on oral pain medications and her intrathecal pain pump. In December 2018, Dr. Swanson examined claimant at employer's request and opined that her symptoms "were due to her 'biopsychosocial pathology' in the lumbar spine and were unrelated to

the 2004 work injury." He also recommended against any further ongoing treatment, including the Nevro trial.

Morgan did not concur in Swanson's report. Morgan continued to treat claimant, and from June 2019 through September 2020, claimant's appointments were primarily to refill her pain pump. In August 2020, Morgan opined that the 2004 work injury "has been and continues to be at least a material contributing cause of her need for medical treatment and services, and specifically, her need for a spinal stimulator and a medication pump," but that "her failed lumber laminotomy/discectomy is also a causative factor."

Employer did not authorize the Nevro trial and did not pay for claimant's treatments with Morgan from June 14, 2019, through September 3, 2020. Employer contended that Morgan's disputed services were not causally related to the accepted claim and were excessive, inappropriate, and ineffectual. The Workers' Compensation Division referred the parties' medical services dispute to the hearing division, and the Administrative Law Judge (ALJ) concluded that claimant had not established a causal relationship between the 2004 work injury and the disputed medical services.

On review, the board reversed, concluding that claimant had established the necessary causal relationship. The board found Morgan's opinion that the 2004 injury was a material cause for claimant's need for treatment, "when read in context and as a whole, to be well reasoned and explained, as well as based on complete information," and found "no persuasive reason not to defer to Dr. Morgan's opinion." In contrast, the board found that Swanson's opinion was not persuasive because it did not adequately address or rebut Morgan's or Kitchel's opinions.

Employer sought reconsideration with the board, arguing that there was no medical evidence that the medical services were "for" or "directed to" a specific condition, and that without such evidence, the board cannot determine which legal standard in ORS 656.245(1)(a) applies.

The board granted reconsideration. In its order on reconsideration, the board agreed that the medical services must be "for" or "directed to" "a specific condition caused in

material or major part by the work injury." However, the board concluded that the medical evidence met that standard. The board concluded that, "[r]eviewing the record as a whole, in context, we are satisfied that the disputed medical services are 'for' claimant's chronic pain condition caused at least in material part by claimant's 2004 compensable injury." The board interpreted Morgan's opinion, as supported by Kitchel's opinion, "to persuasively support a conclusion that the disputed medical services were for claimant's chronic pain condition that was caused at least in material part by the 2004 compensable injury." The board thus concluded that Morgan's opinion persuasively established causation under ORS 656.245(1)(a). The board also discounted Swanson's opinion because he did not address Morgan's opinion and did not sufficiently explain how claimant's "biopsychosocial" factors "were the cause of claimant's current conditions and need for treatment without any material contribution from the 2004 compensable injury." The board thus adhered to its prior order and further found "that the disputed medical services are for a condition(s) that was caused in material part by claimant's 2004 compensable injury."

Employer now seeks judicial review of the board's order on reconsideration.

In its first assignment of error, employer argues that the board erred in its interpretation and application of ORS 656.245(1)(a) to this case. "We review whether the board employed the correct legal standard in applying ORS 656.245(1)(a) for legal error." *Edwards v. Cavenham Forest Industries*, 312 Or App 153, 157, 492 P3d 750, *rev den*, 369 Or 69 (2021).

ORS 656.245(1)(a) provides:

"For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions caused in material part by the injury for such period as the nature of the injury or the process of the recovery requires, subject to the limitations in ORS 656.225, including such medical services as may be required after a determination of permanent disability. In addition, for consequential and combined conditions described in ORS 656.005(7), the insurer or the self-insured employer shall

cause to be provided only those medical services directed to medical conditions caused in major part by the injury."

The two sentences in ORS 656.245(1)(a) address different things. As we have explained, the first sentence addresses "ordinary conditions," and provides "that medical services are compensable if they are 'for conditions caused in material part by the injury for such period as the nature of the injury or the process of recovery requires[.]'" *Edwards*, 312 Or App at 158 (quoting ORS 656.245(1)(a)). That sentence is also subject to the limitations in ORS 656.225, which addresses "medical services solely directed to a worker's preexisting condition." *See generally SAIF v. Sprague*, 346 Or 661, 664-65, 217 P3d 644 (2009) (providing statutory overview). As explained by the Supreme Court, the word "injury" in the first part of the sentence refers to "the work accident that caused the medical condition and resulted in the need for medical services. It does not mean the medical condition, and it is not limited to conditions that the insurer has accepted at the time that medical services are sought." *Garcia-Solis v. Farmers Ins. Co.*, 365 Or 26, 42-43, 441 P3d 573 (2019); *see also SAIF v. Martinez*, 219 Or App 182, 191, 182 P3d 873 (2008), *abrogated on other grounds by Garcia-Solis*, 365 Or at 42-43 (stating that "'conditions' as used in ORS 656.245(1)(a) refers to the claimant's *current* conditions for which treatment is sought" (emphasis in original)). The word "injury" in the second part of the sentence refers to "the medical condition that resulted from the accident." *Garcia-Solis*, 365 Or at 39. "Thus, medical services are compensable under the first sentence of ORS 656.245(1)(a) if they are for conditions caused in material part by the work accident, and that compensability extends for however long the nature of the conditions caused by the accident or the recovery from those conditions requires." *Edwards*, 312 Or App at 159.

The second sentence of ORS 656.245(1)(a) provides that "for consequential and combined conditions described in ORS 656.005(7)," medical services are compensable if "directed to medical conditions caused in major part by the injury."[1]

---

[1] A consequential condition is one that is a "consequence of a compensable injury" and is not compensable "unless the compensable injury is the major contributing cause of the consequential condition." ORS 656.005(7)(a)(A). A combined condition occurs when a "compensable injury combines at any time with

That sentence "requires that the compensable injury be the major cause of the relevant medical condition. The medical services, in turn, must be 'directed to' that medical condition." *Sprague*, 346 Or at 674 (emphasis and citation omitted).

With that understanding, we turn to employer's arguments. Employer argues that, under ORS 656.245(1)(a) and *Sprague*, the condition being treated by the medical service must be identified and categorized as an ordinary, combined, consequential, or preexisting condition, and then expert medical evidence is needed to address causation under the corresponding sentence of ORS 656.245(1)(a) or, for a preexisting condition, ORS 656.225. Employer argues that the board erred here because "it failed to require expert proof that a condition treated by the proposed medical services satisfied the necessary causal standard" because "Morgan never discussed the causal relationship between any conditions and the injury event[; i]nstead she merely related the treatment to the workplace accident." Employer further argues that Swanson did identify the conditions being treated as "the failed 1996 surgery, opioid dependency, and mental health/psychosocial issues."[2]

_____

a preexisting condition to cause or prolong disability or a need for treatment[.]" ORS 656.005(7)(a)(B). "[T]he combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition." *Id.*

[2] Employer also asserts that the board legally erred because claimant's chronic pain can only qualify as a "symptom" and not a "condition" as a matter of law, relying on *Young v. Hermiston Good Samaritan*, 223 Or App 99, 194 P3d 857 (2008), which interpreted "medical condition" in ORS 656.267. We conclude that employer did not sufficiently preserve that issue for review, having failed to address below the legal meaning of "condition" in ORS 656.245. Further, employer's position does not appear to comport with how we have treated "condition" under ORS 656.245(1)(a) in our case law. For example, in *SAIF v. Swartz*, 247 Or App 515, 525, 270 P3d 335 (2011), *abrogated on other grounds by Garcia-Solis*, 365 Or at 42-43, we observed that the condition was "ongoing low back pain" for purposes of ORS 656.245(1)(a).

Further, even if *Young* were applied to ORS 656.245(1)(a), our case law establishes that whether something qualifies as a "condition" is "ultimately a question of fact to be decided based on the medical evidence in individual cases." *Armenta v. PCC Structural, Inc.*, 253 Or App 682, 692 n 7, 292 P3d 573 (2012); *see also SAIF v. Stephens*, 247 Or App 107, 113, 269 P3d 62 (2011) ("In determining whether the board's finding that coccydynia is a condition is supported by substantial evidence, it is not this court's function to substitute its judgment for that of the board. The question is whether a reasonable person could find, based on the record as a whole, that the coccydynia was a 'condition.'"). As a result, we do

We agree with employer that, under ORS 656.245(a) (1), the medical services must be "for conditions" or "directed to medical conditions," depending on which sentence of ORS 656.245(1)(a) applies. *Edwards*, 312 Or App at 161; *see also Garcia-Solis*, 365 Or at 42-43 (holding, with regard to the first sentence, "the 'injury' is *the work accident that caused the medical condition* and resulted in the need for medical services" (emphasis added)). However, the board did not legally err in applying the statute.

In its reconsideration order, the board also agreed with employer that the medical services must be "for" or "directed to" "a specific condition caused in material or major part by the work injury." As set out above, the board interpreted Morgan's opinion, as supported by Kitchel's opinion, "to persuasively support a conclusion that the disputed medical services were for claimant's chronic pain condition," that that condition was an "ordinary condition," and "was caused at least in material part by the 2004 compensable injury." We see no legal error in the board's analysis under ORS 656.245(1)(a), as argued by employer. A condition is the current condition or conditions for which treatment is sought, *Martinez*, 219 Or App at 191, and, based on the medical evidence, the board identified the condition and concluded that the condition was caused in material part by the work injury.

We turn to employer's second assignment of error, which asserts that the board's order is not supported by substantial evidence. In particular, employer argues that the record does not support the board's determinations that claimant's chronic pain syndrome was a condition, that the disputed services were for chronic pain, or that the chronic pain was caused in material part by the work accident. In addressing that argument, "we must determine whether the board's evaluation of expert medical opinions is supported by evidence that, considering the record as a whole, would permit a reasonable person to make the findings." *SAIF*

---

not further address employer's contention that the board legally erred by identifying the condition as chronic low back pain or chronic pain syndrome. However, we do address the fact issue of whether the record supported the board's finding that claimant's chronic low back pain was the condition that the medical services were for.

*v. Walker*, 260 Or App 327, 337, 317 P3d 384 (2013) (citing *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988)). In doing so, "we do not substitute our judgment for that of the board; rather, we determine whether the board's evaluation of that evidence was reasonable." *SAIF v. Pepperling*, 237 Or App 79, 84-85, 238 P3d 1013 (2010). When there is conflicting medical evidence, "we will reverse the board 'only when the credible evidence apparently weighs overwhelmingly in favor of one finding and the [b]oard finds the other without giving a persuasive explanation.'" *SAIF v. Pruitt*, 198 Or App 253, 258, 108 P3d 586 (2005), *abrogated on other grounds by Garcia-Solis*, 365 Or at 42-43 (quoting *Armstrong*, 90 Or App at 206).

Under that standard, we have examined the medical record and conclude that the board's evaluation of it is reasonable. It is undisputable based on the medical evidence that the disputed medical services were to treat claimant's chronic low back pain. Employer's main contention is that the record does not establish that claimant's chronic low back pain qualifies as a condition, and that, even if it did, Morgan did not identify that as claimant's condition. We reject that contention.

In 2014, Kitchel opined that claimant had developed a chronic pain syndrome as secondary to the 2004 work injury, and further recommended that claimant continue treatment with Morgan, a pain management specialist, who claimant had been seeing since 2005 for low back pain. Kitchel also opined that there was no evidence that claimant had combining conditions. Morgan's progress notes during the disputed treatment period provide that claimant was being treated for "low back pain" and "chronic pain" and to fill her pain pump, and also listed several assessments with diagnostic codes, including lumbar post-laminectomy syndrome and lumbar radiculopathy, both of which the medical evidence shows are characterized by "intractable pain" or chronic pain.[3] *See also Armenta v. PCC Structural, Inc.*, 253 Or App 682, 692 n 7, 292 P3d 573 (2012) (explaining

---

[3] The total number of assessments vary somewhat between progress notes, but the most current notes included lumbar post-laminectomy syndrome, lumbar radiculopathy, lumber degenerative disc disease, sacroiliitis, muscle spasm, drug induced constipation, gastroparesis, and presence of intrathecal pump.

that "radiculopathy is a generalized term that most commonly refers to pain or numbness"). Morgan's October 23, 2018, note provides that the Nervo trial is to treat her lumbar radiculopathy. The record is replete with evidence that the disputed medical services were "for" chronic lumbar pain. Morgan was not required to use the magic word "condition" for the board to reasonably read the medical evidence as supporting that the disputed medical services were "for" a chronic lumbar pain condition. Based on the same evaluation, we reject employer's argument that substantial evidence did not support that chronic pain or chronic pain syndrome was a "condition" rather than a "symptom." *See SAIF v. Swartz*, 247 Or App 515, 525, 270 P3d 335 (2011), *abrogated on other grounds by Garcia-Solis*, 365 Or at 42-43 ("There is substantial evidence in the record, \*\*\*, that the injections are 'for' claimant's low back pain.").

We are also not persuaded by employer's argument that Morgan failed to opine that claimant's condition was an ordinary condition caused in material part by the work injury. Again, we do not require medical experts to use magic legal words. Morgan was treating claimant from June 2019 through September 2020 and recommending a Nervo trial in 2018 to treat claimant's chronic lumbar pain. She also opined that claimant's 2004 work injury "has been and continues to be at least a material contributing cause of her need for medical treatment and services, and specifically, her need for a spinal stimulator and medication pump," but that "her failed lumbar laminotomy/discectomy is also a causative factor." It was reasonable for the board to infer what Morgan implied, in view of the whole record: that the chronic lumbar pain condition was caused in material part by the 2004 work injury. *See, e.g.*, *Pruitt*, 198 Or App at 258-59 (viewing record as a whole, the doctor implied, and the board was permitted to infer, that the work was the major contributing cause of the need for treatment).

Based on our review of the medical evidence, we conclude that the board's evaluation was not unreasonable and, thus, substantial evidence supports the board's findings.

Affirmed.